**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division**

| | |
|---|---|
| **UNITED STATES OF AMERICA,** ) | |
| ) | **Case No. 2:10-CR-57** |
| v. ) | |
| ) | **Hon. Raymond A. Jackson** |
| **MAXAMAD CALI SACIID, et al.,** ) | |
| ) | |
| **Defendants,** ) | |

### DEFENDANTS' JOINT MOTION TO DISMISS COUNT I

Defendants Maxamad Cali Saciid, Mohammed Abdi Jamah, Jaamac Ciidle, Abdicasiis Cabaase, Abdirasaq Abshir and Mahamed Farraah Hassan, by counsel, and pursuant to Rule 12(b)(2) of the Federal Rules of Criminal Procedure, hereby jointly move this Honorable Court to dismiss Count I. Count I of the indictment alleges that, on or about April 10, 2010, the defendants "committed the crime of piracy as defined by the law of nations," in violation of 18 U.S.C. § 1651. Pursuant to Rule 12(b)(2), this Count should be dismissed because under no set of facts was the offense of "piracy" committed.

According to the government's version of events, on or about April 10, 2010, the defendants were passengers on a small boat near the USS Ashland in the Gulf of Aden. The government maintains that someone on the small boat fired a weapon at the USS Ashland, and the Ashland responded by firing on the small boat, destroying it. The Ashland then took the defendants captive. The parties dispute what prompted the USS Ashland to destroy the small vessel. But there is absolutely no dispute that the defendants did not take control of the USS Ashland, did not board her, and did not successfully obtain anything of value from her.

Assuming that the government's allegations are true, the defendants did not commit the offense of piracy under 18 U.S.C. § 1651. As explained herein, to prove the defendants violated § 1651, the government must show they committed "robbery upon the sea" by seizing control of the USS Ashland. *United States v. Smith*, 18 U.S. (5. Wheat.) 153, 161-62 (1820) (Story, J). The mere act of firing at a ship – even if true – does not constitute "piracy" under § 1651. A "pirate" is someone who engages in "robbery at sea" by "seizing by force, and appropriating to himself, without discrimination, every vessel he meets." *Davison v. Seal-Skins*, 7 F. Cas. 192, 193-94 (Thompson, Circuit Justice, C.C.D. Conn. 1835) (No. 3661).

In this case, it is undisputed that the defendants did not "seize" or "rob" the USS Ashland. Accordingly, the defendants respectfully request that the Court dismiss Count I pursuant to Rule 12(b)(2).

## **BACKGROUND**

There is no dispute regarding the essential facts necessary to decide this motion. The government and the defendants agree that the defendants were captured in the Gulf of Aden on or about April 10, 2010, after the USS Ashland destroyed their small skiff. The government and the defendants also agree that none of the defendants took command of the Ashland. Indeed, it is undisputed that the defendants were not even allowed to board the Ashland until they were pulled from the Gulf of Aden and restrained. The government's version of the events that preceded the destruction of the skiff is set forth in a press release published by the United States Navy on the same day as the incident. *See* Press Release, United States Navy, USS Ashland Captures Pirates (April

10, 2010).[1]  According to the press release, the Ashland "received small arms fire from the skiff." *Id.* The press release details how the Ashland responded by firing on the skiff, which resulted in the defendants abandoning their vessel. *Id.* The press release also details how the Navy rescued the defendants by pulling them from the water and allowed them to board the Ashland only after determining they were not armed. *Id.*

Assuming, solely for the purposes of this motion, that the government would be able to prove all of its allegations at trial, it still could not as a matter of law establish a violation of § 1651. The government could not establish such a violation because, as the Navy press release makes clear, it does not claim that the defendants seized or took control of the Ashland.

## ARGUMENT

**I.    THE COURT MAY DISMISS COUNT I WITHOUT HOLDING A TRIAL PURSUANT TO RULE 12(b)(2) BECAUSE THE ESSENTIAL FACTS ARE NOT IN DISPUTE.**

Whether Count I should be dismissed, given that both sides agree that the defendants did not take command of the Ashland, is a legal issue that can be determined without a trial pursuant to Rule 12(b)(2). Rule 12(b)(2) states that "a party may raise by pretrial motion any defense, objection, or request that the court can determine without a trial of the general issue." The Supreme Court has explained that a defense may be raised and adjudicated in a pre-trial motion "if trial of the facts surrounding the commission of the alleged offense would be of no assistance in determining the validity of the defense." *United States v. Covington*, 395 U.S. 57, 60 (1969); *see also, e.g.*, *United States v. Flores*, 404 F.3d 320, 325 (5th Cir.2005) (Rule 12(b)(2) authorizes dismissal of "an

---

[1] The Navy's press release is available on the internet at www.navy.mil/search/display.asp?story_id=52519 (last visited June 9, 2010).

indictment based on the resolution of a legal question in the presence of undisputed facts"); *United States v. Ali*, 557 F.3d 715, 720 (6th Cir. 2009) (claim that "the undisputed facts did not give rise to the offense charged in the indictment . . . . raises a purely legal question . . . . [and] we conclude [the defendant] properly asserted it in a motion to dismiss"); *United States v. Hall*, 20 F.3d 1084, 1087 (10th Cir.1994) (noting that a district court may dismiss an indictment pretrial for insufficient evidence when the facts are essentially undisputed); *United States v. Yakou*, 428 F.3d 241, 247 (D.C. Cir. 2005) (holding that district court can dismiss indictment based on undisputed facts).

Here, a trial would be of no assistance in determining whether Count I should be dismissed. This motion presents a pure legal issue: whether the defendants can be convicted of piracy under § 1651 without evidence that the defendants took control of and robbed the Ashland.[2]

## II.   UNDER *SMITH*, THE OFFENSE OF "PIRACY" AS ALLEGED IN COUNT I REQUIRES "ROBBERY" OF ANOTHER VESSEL.

Since 1820, the phrase "piracy as defined by the law of nations," as used in § 1651, has had a settled meaning.  Under that settled meaning, the government is required to show that the

---

[2] As noted earlier, no factual dispute exists as to whether the defendants seized and robbed the Ashland.  But the defendants vigorously dispute the government's remaining allegations.  For example, Mr. Saciid and his co-defendants, after being separated and separately interrogated by the NCIS and later the FBI, all provided multiple statements asserting their innocence and explaining that they had been lost at sea for five days prior to being sunk by the USS Ashland.  Mr. Saciid and the others repeatedly told investigators that they had helped transport Somali refugees to Yemen and then been stranded at sea on a small boat without fuel or supplies for several days before firing their single weapon in an act of desperation in order to attract the attention of the USS Ashland.

In addition, the alleged "bullet" holes in the hull of the USS Ashland have not yet been independently examined to ascertain whether, in fact, the holes were caused by something other than bullets or, if consistent with bullet holes, they predated the incident or could have been the result of bullets shot into the air as asserted by the defendants.  For purposes of this motion, however, the Court need not address these facts and can resolve the legal issue of whether the facts as alleged by the government can support the charge of piracy.

defendants committed "robbery at sea" by taking control of the USS Ashland. *United States v. Smith*, 18 U.S. (5. Wheat.) 153, 161-62 (1820) (Story, J.).

Congress enacted § 1651 in 1819. *See* Act to Protect the Commerce of the United States and Punish the Crime of Piracy, ch. 77, sec. 5, 3 Stat. 511 (1819). At the time, Congress imposed the death penalty for the offense, whereas the modern version of the statute imposes a mandatory term of life imprisonment. Except for imposing a less-severe punishment, the statute has remained substantively unchanged since 1819.[3] As with the current version of the statute, the 1819 version did not specifically identify what conduct was encompassed within the phrase "piracy as defined by the law of nations."

In 1820, the United States Supreme Court examined § 1651 and held that "that piracy, by the law of nations, is robbery upon the sea." *Smith*, 18 U.S. at 162. In *Smith*, the jury found in a special verdict that the appellant was part of a sailing crew that, after committing mutiny and abandoning their ship, "seized by violence" and "possessed themselves of" a new ship. *Id.* at 154. On appeal, the appellant argued that § 1651 was unconstitutionally vague because "piracy, as defined by the law of nations" lacked a precise meaning. *Id.* at 158. The Supreme Court rejected this argument and held that "piracy, as defined by the law of nations" had a settled and well-established meaning:

---

[3] The statute as originally enacted in 1819 stated in its entirety as follows:

> if any person or persons whatsoever, shall, on the high seas, commit the crime of piracy, as defined by the law of nations, and such offender or offenders, shall afterwards be brought into or found in the United States, every such offender or offenders shall, upon conviction thereof, before the circuit court of the United States for the district into which he or they may be brought, or in which he or they shall be found, be punished with death.

Act to Protect the Commerce of the United States and Punish the Crime of Piracy, ch. 77, sec. 5, 3 Stat. 511 (1819).

> There is scarcely a writer on the law of nations, who does not allude to piracy as a crime of a settled and determinate nature; and whatever may be the diversity of definitions, in other respects, all writers concur, in holding, that robbery, or forcible depredations' upon the sea, animo furandi, is piracy. . . . So that, whether we advert to writers on the common law, or the maritimo law, or the law of nations, we shall find that they universally treat of piracy as an offence against the law of nations, and that its true definition by that law is robbery upon the sea. . . . We have, therefore, no hesitation in declaring, that piracy, by the law of nations, is robbery upon the sea, and that it is sufficiently and constitutionally defined by the fifth section of the act of 1819.

*Smith*, 18 U.S. at 161-62. The Court further held that the appellant's conduct – seizing control of another ship – constituted "piracy" under this definition. *Id.* at 163.

*Smith* is the definitive authority on what is required to establish piracy under § 1651. Since *Smith*, federal courts have consistently defined "piracy" as requiring the robbery or seizing of another vessel. *See, e.g.*, *United States v. Furlong*, 18 U.S. (5. Wheat.) 184, 204 (1820) (relying on *Smith* and holding "the 5th section of the act of the 3d of March, 1819, furnishes a sufficient definition of piracy, and that it is defined 'robbery on the seas'"); *Davison v. Seal-Skins*, 7 F. Cas. 192, 193-94 (Thompson, Circuit Justice, C.C.D. Conn. 1835 ) (No. 3661) ("[r]obbery on the high seas is understood to be piracy by our law. . . . A pirate is one who acts solely on his own authority, without any commission or authority from a sovereign state, *seizing by force, and appropriating to himself, without discrimination, every vessel he meets with*; and hence pirates have always been compared to robbers." (emphasis added)); *In re Charge to Grand Jury-Treason*, 30 F. Cas. 1049, 1051 (C.C.D. Mass. 1861) (No. 18,277) ("[p]irates are generally described as sea-robbers"); *Fifield v. Ins. Co. of Pennsylvania*, 47 Pa. 166, 1864 WL 4665 at *3 (Pa. 1864) ("The distinction between privateering and piracy is the distinction between captures jure belli under colour of governmental authority and

for the benefit of a political power organized as a government de jure or de facto, and mere robbery on the high seas committed from motives of personal gain, like theft or robbery on land.").

*Smith* remains good law today. The only modern case to address the issue of piracy, albeit in a context that did not involve an alleged violation of § 1651, cited *Smith* as establishing the "traditional definition" of piracy as "robbery, or forcible depredations upon the sea." *See United States v. Shi*, 525 F.3d 709, 721 (9th Cir. 2008) (citing *United States v. Smith*, 18 U.S. 153, 161 (1820)).

By defining piracy for purposes of § 1651 based on "the law of nations," Congress incorporated a pre-existing and well-defined standard. As the Court noted in *Smith*, at the time Congress enacted § 1651 the offense of piracy under "the law of nations" had a "settled" and "determined" meaning. *Smith*, 18 U.S. at 161. This well-established meaning is reflected in decisions that pre-date the statute. For example, in a 1795 opinion the Supreme Court explained that, under "the general law of nations," "[w]hat is called robbery on the land, is piracy if committed at sea." *See Talbot v. Jansen*, 3 U.S. (3 Dall.) 133, 160 (1795); *see also United States v. Tully*, 28 F. Cas. 226, 229 (Story, Circuit Justice, C.C.D. Mass. 1812) (No. 16,545) ("Piracy, by the common law, consists in committing those acts of robbery and depredation upon the high seas which, if committed on shore, would amount to felony there.").

This Court is bound by *Smith* and the well-established meaning of piracy at the time § 1651 was enacted. As the Supreme Court has explained, terms in statutes are presumed "to have the meaning generally accepted in the legal community at the time of enactment." *Department of Labor v. Greenwich Collieries*, 512 U.S. 267, 275 (1994); *see also Carcieri v. Salazar*, 129 S. Ct. 1058, 1064 (2009) (terms in statute should be understood based on the ordinary meaning of those terms

at the time the statute was enacted); *Terrell v. United States*, 564 F.3d 442, 449 (6th Cir. 2009) ("statutory ambiguity must be determined at the time the language was enacted into law").  At the time § 1651 was enacted, and as made clear by *Smith*, "piracy as defined by the law of nations" had a specific meaning, namely, "robbery at sea."

Moreover, the scope of the offense of piracy under § 1651 has not expanded since *Smith* – a fact that is acknowledged in the statute's legislative history and in the United States Code.  In 1948, Congress comprehensively revised Title 18.  As part of that comprehensive revision, Congress grouped the then-existing piracy and piracy-related offenses together in chapter 81 of Title 18, but did not make substantive changes to the piracy statute.  *See* Act of June 25, 1948, ch. c. 645, 62 Stat. 774 (1948) (re-codification piracy statute in chapter 81 at § 1651; same statute previously was codified in chapter 12 at § 481).  In proposing the comprehensive revision to Title 18, the House Judiciary Committee issued a Report that specifically noted the 1948 Act was merely re-codifying the existing domestic piracy law, notwithstanding any international developments regarding the law of piracy.  H.R. REP. NO. 80-304, at A112 (1947).  The Report stated that "in light of far-reaching developments in the field of international law and foreign relations, the law of piracy is deemed to require a fundamental reconsideration and complete restatement, perhaps resulting in drastic changes by way of modification and expansion." *Id.*  The Report then made clear that the proposed revision of Title 18 did *not* include such a "complete restatement" of the nation's piracy law: "Such a task may be regarded as beyond the scope of this project. . . .  It is recommended, however, that at some opportune time in the near future, the subject of piracy be entirely reconsidered and the law bearing on it modified and restated in accordance with the needs of the times." *Id.*

Congress, however, never updated § 1651. And, significantly, in enacting the revisions to Title 18 in 1948 Congress copied verbatim the above-quoted House Report language and placed this language in the revision notes preceding chapter 81. Thus, since 1948, the United States Code has contained revision notes that specifically acknowledge the nation's piracy law has not changed since 1819. This Court can rely on the revision notes and the House Report in determining § 1651 has the same meaning today as it did when the *Smith* Court interpreted it in 1820. *See Newman-Green, Inc. v.Alfonzo-Larrain*, 490 U.S. 826, 831-32 & n.4 (1989) ("Although Revision Notes are not conclusive evidence of congressional intent," such notes can assist in statutory construction and the determination of congressional intent.); *see also Alaska v. Native Village of Venetie Tribal Gov't*, 522 U.S. 520, 530 (1998) (looking to revision notes to determine meaning of statute).

Under the established meaning of "piracy as defined by the law of nations" at the time § 1651 was enacted and as detailed a year later in *Smith*, it is clear that, as a matter of law, the defendants did not commit the offense of piracy. They did not rob or seize the USS Ashland. No federal court has held that a defendant may be convicted under § 1651 for conduct that falls short of robbing or seizing another vessel. And *Smith* precludes such a result because a defendant cannot be a "pirate" under § 1651 unless he commits "robbery upon the sea." Given that it is undisputed that the defendants did not seize or take control of the USS Ashland, as a matter of law they cannot be convicted of piracy under § 1651. Count I should therefore be dismissed.

**III.   ALTERNATIVELY, IF THE *SMITH* DEFINITION OF PIRACY IS NOT CONTROLLING, § 1651 IS UNCONSTITUTIONALLY VAGUE.**

Defendants submit that the phrase "piracy as defined by the law of nations" has a specific and limited meaning, as detailed in *Smith* and its progeny. If, however, the Court disagrees and

determines that *Smith* is not controlling, it should hold the statute is unconstitutionally vague as to the conduct it proscribes.

To be consistent with due process, a criminal statute must provide "a fair warning . . . to the world in language that the common world will understand, of what the law intends to do if a certain line is passed. To make the warning fair, so far as possible the line should be clear." *McBoyle v. United States*, 283 U.S. 25, 27 (1931). "[T]he touchstone is whether the statute, either standing alone or as construed, made it reasonably clear at the relevant time that the defendant's conduct was criminal." *United States v. Lanier*, 520 U.S. 259, 266 (1997). In other words, "[w]hat renders a statute vague is not the possibility that it will sometimes be difficult to determine whether the incriminating fact it establishes has been proved; but rather the indeterminacy of precisely what that fact is." *United States v. Williams*, 553 U.S. 285, 306 (2008). Whether a criminal statute is vague as applied to the alleged conduct is "decided by the court as an issue of law." *United States v. Mallas*, 762 F.2d 361, 363-64 & n.4 (4th Cir. 1985).

In the context of criminal statutes, fair warning consistent with the Due Process Clause contains three related components. First, the doctrine of vagueness prohibits the enforcement of statutes that proscribe conduct "in terms so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application." *Lanier*, 520 U.S. at 266. Second, "the canon of strict construction of criminal statutes, or rule of lenity, ensures fair warning by so resolving ambiguity in a criminal statute as to apply it only to conduct clearly covered." *Id*. Third, "although clarity at the requisite level may be supplied by judicial gloss on an otherwise uncertain statute, due process bars courts from applying a novel construction of a criminal statute to conduct that neither

the statute nor any prior judicial decision has fairly disclosed to be within its scope." *Id.* (citations omitted).

Applying the foregoing principles to § 1651, the statute is unconstitutionally vague if it is not limited to the established *Smith* definition. The statute does not define or include terms describing the meaning of the phrase "piracy as defined by the law of nations." The statute provides no clear boundaries as to what conduct it prohibits. There is nothing in the statute that would give a person of "common intelligence" "fair warning" as to what is encompassed within the phrase "piracy as defined by the law of nations." Indeed, as discussed above, Congress has published revision notes acknowledging that § 1651 requires "fundamental reconsideration" but has never updated or clarified the statute.

Accordingly, any interpretation of the statute that includes conduct beyond what is detailed in *Smith* and its progeny would be a novel interpretation of § 1651. Given that no case has ever applied § 1651 in the context of an attempted but unsuccessful attack on a vessel, due process prohibits such a novel judicial interpretation because the statute fails to provide fair warning of the conduct that it prohibits. Therefore, to the extent the Court determines the offense of piracy under § 1651 is not limited to the definition set forth in *Smith*, the statute is unconstitutionally vague and Count I should be dismissed.

## **CONCLUSION**

For the reasons set forth above, the defendants respectfully request that this Court grant this Motion and dismiss Count I.

Respectfully submitted,

            MAXAMAD CALI SACIID

            MOHAMMED ABDI JAMAH

            JAAMAC CIIDLE

            ABDICASIIS CABAASE

            ABDIRASAQ ABSHIR

            MAHAMED FARRAAH HASSAN

      By:     /s/
         Keith Loren Kimball


Keith Loren Kimball
VSB # 31046
Arenda Allen
VSB # 35517
Attorneys for Maxamad Cali Saciid
Office of the Federal Public Defender
150 Boush Street, Suite 403
Norfolk, Virginia 23510
(757) 457-0800
(757) 457-0880 (telefax)
keith_kimball@fd.org
arenda_allen@fd.org


Robert Rigney
VSB # 27537
Attorney for Defendant Mohammed Abdi Jamah
BB & T Building, Suite 1520
500 East Main Street
Norfolk, Virginia 23510
(757) 625-1775
(757) 625-1887 (telefax)
rigney@prlaw.org

Christian Connell
VSB # 35009
Attorney for Defendant Jaamac Ciidle

555 E. Main Street, Suite 1410
Norfolk, Virginia 23510
(757) 533-6500
(757) 533-6565 (telefax)
christian.connell@verizon.net

Bruce Sams
VSB # 21702
Attorney for Defendant Abdicasiis Cabaase
208 Plume Street, Suite 210
Norfolk, Virginia 23510
(757) 627-3999

(757) 627-4042 (telefax)
samsandgilchrist@sag.hrcoxmail.com

Trey Kelleter
VSB # 41606
Attorney for Defendant Abdirasaq Abshir
500 World Trade Center
Norfolk, Virginia 23510
(757) 446-8697
(757) 446-8670 (telefax)
tkelleter@vanblk.com

David Good
Attorney for Defendant Mahamed Farraah Hassan
VSB # 44107
2492 North Landing Road, Suite 104
Virginia Beach, Virginia 23456
(757) 306-1331
(757) 301-3640 (telefax)
dgood@dgoodlaw.com

**<u>CERTIFICATE OF SERVICE</u>**

I certify that on this 9th day of June, 2010, I electronically filed the foregoing with the

Clerk of Court using the CM/ECF system, which will send a notification of such filing (NEF) to:

Ben Hatch
Assistant United States Attorney
Office of the United States Attorney
600 East Main Street, Suite 1800
Richmond, Virginia 23219
ben.hatch@usdoj.gov

and

Joseph DePadilla
Assistant United States Attorney
Office of the United States Attorney
101 W. Main Street, Suite 8000
Norfolk, Virginia 23510
joe.depadilla@usdoj.gov


_____/s/_____
Keith Loren Kimball
VSB # 31046
Attorney for Defendant Maxamad Saciid
Office of the Federal Public Defender
150 Boush Street, Suite 403
Norfolk, Virginia 23510
(757) 457-0800
(757) 457-0880 (telefax)
keith_kimball@fd.org